CLERC v CHIPPEWA COUNTY WAR MEMORIAL HOSPITAL

Docket No. 254940. Submitted May 19, 2005, at Marquette. Decided August 4, 2005, at 9:05 a.m. Leave to appeal sought.

Richard T. Clerc, as personal representative of the estate of Saralyn M. Clerc, deceased, brought a wrongful death action in the Chippewa Circuit Court against Chippewa County War Memorial Hospital and Robert Baker, M.D., alleging that Dr. Baker was negligent in reading and interpreting a chest x-ray of the deceased by failing to diagnose lung cancer, thus delaying treatment of the fatal cancer. The court, Nicholas J. Lambros, J., struck the plaintiff's causation experts' testimony and granted summary disposition for the defendants, ruling that the plaintiff's experts were qualified, but that they did not have a scientific basis for asserting that the decedent's cancer was at Stage I or Stage II when Dr. Baker read the x-ray and that the decedent would have had a greater than fifty percent chance of surviving the cancer had the cancer been diagnosed at the time the x-ray was read. The plaintiff appealed.

The Court of Appeals *held*:

The circuit court failed to properly exercise its function as gatekeeper of expert opinion testimony in striking the testimony of the plaintiff's witnesses. The circuit court has an obligation under MRE 702 to ensure that expert testimony is reliable; the court may not abandon the obligation or perform it inadequately. Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation. To provide expert opinion testimony, an expert must be qualified, his or her testimony must be relevant to assist the court to understand the evidence or to determine a fact in issue, and the testimony must be derived from recognized scientific, technical, or other specialized knowledge. The experts' testimony about "backward cancer staging" to determine at what stage the cancer might have been at an earlier time requires that the circuit court either conduct a more searching inquiry under MRE 702 or conduct an evidentiary hearing pursuant to *People v Davis*, 343 Mich 348 (1955), and *Frye v United States*, 54 US App DC 46 (1923), if the

circuit court determines that backwards cancer staging is a novel scientific principle.

Vacated and remanded for further proceedings.

EVIDENCE — EXPERTS — OPINION TESTIMONY — ADMISSIBILITY.

A trial court must exercise its role as a gatekeeper under MRE 702 to ensure that expert testimony is reliable before it is admitted; to provide admissible expert opinion testimony, an expert must be qualified, the testimony must be relevant to assist the court to understand the evidence or to determine a fact in issue, and the testimony must be derived from recognized scientific, technical, or other specialized knowledge; if an expert's testimony concerns a novel scientific principle, the trial court must conduct a hearing pursuant to *People v Davis*, 343 Mich 348 (1955), and *Frye v United States*, 54 US App DC 46 (1923).

*Turner & Turner, P.C.* (by *Matthew L. Turner*) (*Bendure & Thomas*, by *Mark R. Bendure*, of counsel), for Richard T. Clerc.

*Kitch Drutchas Wagner Denardis & Valitutti* (by *Susan Healy Zitterman* and *Susan Douglas MacGregor*) for Chippewa County War Memorial Hospital.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for Robert Baker, M.D.

Before: MURRAY, P.J., and O'CONNELL and DONOFRIO, JJ.

O'CONNELL, J. In this medical malpractice action, plaintiff appeals as of right an order striking plaintiff's expert witness testimony and granting defendants' motion for summary disposition under MCR 2.116(C)(10). We vacate and remand.

Plaintiff's decedent sought medical treatment for symptoms that were consistent with pneumonia. In July 1997, defendant Robert Baker, M.D., a radiologist,

reviewed an x-ray of the decedent's chest and lungs. At that time, Dr. Baker reported no abnormal findings. In February 1998, however, plaintiff's decedent was diagnosed with lung cancer, which claimed her life in March 1999. Plaintiff thereafter filed a medical malpractice wrongful death action against Dr. Baker and Chippewa County War Memorial Hospital, the hospital with which Dr. Baker was affiliated. Plaintiff primarily alleged that Dr. Baker was negligent in reading and interpreting the results of the July 1997 chest x-ray and that the delay in diagnosing the decedent's lung cancer delayed treatment and caused her death.

During discovery, plaintiff deposed his causation experts, Drs. Stephen Veach and Barry L. Singer. Both doctors are board-certified in medical oncology. According to the doctors' deposition testimony, lung cancer is staged at Stages I through IV for the purposes of treatment and prognosis. Patients with Stage I lung cancer have a five-year survival rate of seventy percent, while patients with Stage II lung cancer have a five-year survival rate of forty percent. Dr. Veach testified that the decedent's lung cancer would have been at either Stage I or Stage II in July 1997. However, he conceded that he could not state with a reasonable degree of certainty how much the decedent's cancer had metastasized in July 1997. Dr. Singer testified that the decedent's lung cancer would have been at either Stage I or Stage II in 1997, but that he "favored" staging the cancer at Stage I at that time. When asked what literature or information he relied on in forming his opinion, Dr. Singer asserted that he was relying on his "general experience" as an oncologist. Dr. Singer conceded that he could not state with a reasonable degree of probability that the decedent's cancer was at Stage I or II in July 1997. However, he stated that he could conclude with a reasonable degree of certainty that if

the decedent's cancer had been diagnosed in July 1997, her chances of survival would have been sixty percent. Dr. Singer based his opinion about the decedent's chances of five-year survival on what he called the "weighted averages" of the five-year survival rates for individuals with Stage I or Stage II lung cancer.

Defendants filed separate motions to strike plaintiff's causation experts' testimony, arguing that it was speculative and lacked a reliable scientific basis. Specifically, defendants contended that plaintiff's experts' testimony was inadmissible under MRE 403, MRE 702, and MCL 600.2955. In the alternative, defendant hospital moved for the trial court to conduct a *Davis-Frye*[1] hearing. Defendants also moved for summary disposition under MCR 2.116(C)(10).

The trial court ruled that while plaintiff's experts were qualified, they did not have a scientific basis for asserting that the decedent's cancer was at Stage I or Stage II in July 1997, and it was therefore impossible to determine the stage of the decedent's cancer in July 1997. The trial court characterized as mere "speculation and conjecture" plaintiff's experts' contention that had the decedent's cancer been diagnosed in July 1997, the decedent would have had a greater than fifty percent chance of surviving the cancer. Without plaintiff's experts' testimony, plaintiff was unable to establish that the decedent would have had a greater than fifty percent chance to survive. Therefore, the trial court granted defendants' motion for summary disposition under MCR 2.116(C)(10).

---

[1] See *People v Davis*, 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States*, 54 US App DC 46; 293 F 1013 (1923). The *Davis-Frye* test allows the admission of expert testimony regarding novel scientific evidence only if the evidence has gained general acceptance among scientific experts in the field.

This Court reviews de novo a trial court's grant or denial of summary disposition under MCR 2.116(C)(10). *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. *Downey v Charlevoix Co Rd Comm'rs*, 227 Mich App 621, 625; 576 NW2d 712 (1998). The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(C)(10). *Downey, supra* at 626; MCR 2.116(G)(5). When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court "must consider the documentary evidence presented to the trial court 'in the light most favorable to the nonmoving party.' " *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 539; 620 NW2d 836 (2001), quoting *Harts v Farmers Ins Exchange*, 461 Mich 1, 5; 597 NW2d 47 (1999). A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) "if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

This Court reviews the trial court's decision regarding the qualification of an expert witness for an abuse of discretion. *Bahr v Harper-Grace Hospitals*, 448 Mich 135, 141; 528 NW2d 170 (1995). While the trial court's exercise of its role as a gatekeeper under MRE 702 to ensure that expert testimony is reliable "is within a court's discretion, a trial judge may neither 'abandon' this obligation nor 'perform the function inadequately.' " *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004), quoting *Kumho Tire Co*

*Ltd v Carmichael*, 526 US 137, 158-159; 119 S Ct 1167; 143 L Ed 2d 238 (1999) (Scalia, J., concurring).

MRE 702 governs the admissibility of expert testimony. MRE 702 provides:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise . . . .

The trial court has an obligation under MRE 702 "to ensure that any expert testimony admitted at trial is reliable." *Gilbert, supra* at 780. "Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation." *Id.* at 782. In *People v Beckley*, 434 Mich 691, 711; 456 NW2d 391 (1990) (opinion by BRICKLEY, J.), our Supreme Court articulated three conditions for the admissibility of expert testimony under MRE 702: (1) the expert must be qualified, (2) the testimony is relevant to assist the trier of fact to understand the evidence or to determine a fact in issue, and (3) the testimony is derived from recognized scientific, technical, or other specialized knowledge. In *Craig v Oakwood Hosp*, 471 Mich 67; 684 NW2d 296 (2004), our Supreme Court stated:

> Under MRE 702, the trial court had an independent obligation to review *all* expert opinion testimony in order to ensure that the opinion testimony . . . was rendered by a "qualified expert," that the testimony would "assist the trier of fact," and . . . that the opinion testimony was rooted in "recognized" scientific or technical principles. These obligations applied irrespective of the type of expert opinion testimony offered by the parties. While a party may waive any claim of error by failing to call this gatekeeping obligation to the court's attention, the court *must* evaluate

expert testimony under MRE 702 once that issue is raised. [*Id.* at 82 (emphasis in original).]

We find that the trial court failed to properly exercise its function as a gatekeeper of expert opinion testimony in striking plaintiff's experts' testimony without either conducting a more searching inquiry under its obligation to preclude speculative and unreliable evidence under MRE 702, see *Beckley, supra* at 710-719, or holding a *Davis-Frye* evidentiary hearing to determine whether plaintiff's experts' testimony regarding the "backwards staging" of the decedent's cancer had achieved general scientific acceptance for reliability. We therefore remand this case to the trial court. On remand, the trial court shall either conduct a *Davis-Frye* evidentiary hearing or a more thorough inquiry under MRE 702 to ensure that the testimony satisfied the three *Beckley* conditions for admissibility.

*Davis-Frye* applies only to novel scientific principles. *People v Coy*, 258 Mich App 1, 10; 669 NW2d 831 (2003). The parties did not address, and the trial court did not decide, whether the process of "backwards cancer staging" constitutes a novel scientific principle. On remand, the trial court shall make such a determination. If, on remand, the trial court decides that such evidence is a novel scientific principle, then it must hold a *Davis-Frye* hearing. Even if the testimony did not involve a novel scientific principle, however, the trial court still had an obligation to ensure that plaintiff's experts' testimony was reliable under MRE 702. "Because the court's gatekeeper role is mandated by MRE 702, rather than *Davis-Frye*, the question whether *Davis-Frye* is applicable to evidence that is not 'novel' has no bearing on whether the court's gatekeeper responsibilities extend to such evidence. These responsibilities are mandated by MRE 702 irrespective of whether proffered evidence

is 'novel.' " *Gilbert, supra* at 781 n 52. The trial court's obligation under MRE 702 "mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data. . . . The proponent must also show that any opinion based on those data expresses conclusions reached through reliable principles and methodology." *Gilbert, supra* at 782. If the trial court decides that plaintiff's experts' testimony does not constitute a novel scientific principle, the trial court shall conduct a more "searching inquiry" under MRE 702. See *Beckley, supra* at 710-719.

The proponent of expert testimony bears the burden of proving that the contested opinion is based on generally accepted methodology. *Craig, supra* at 83. In this case, by striking plaintiff's experts' testimony without holding a *Davis-Frye* hearing or conducting a more searching inquiry under MRE 702, the trial court foreclosed plaintiff's ability to sustain this burden. In other words, the trial court prematurely struck plaintiff's experts' testimony and deprived plaintiff of the opportunity to provide medical or scientific authority to support his experts' claims that the decedent's lung cancer was at Stage I or Stage II in July 1997. Plaintiff should have been afforded the opportunity to present the testimony of disinterested and impartial experts to show that his causation experts' testimony regarding the "backwards cancer staging" of the decedent's cancer to July 1997 was supported by medical or scientific data. See *Coy, supra* at 10.

Our decision to remand for the trial court to conduct a more searching inquiry under MRE 702 or a *Davis-Frye* hearing should not be interpreted by the trial court as a mandate to admit plaintiff's experts' testimony. We merely hold today that the trial court should not have

stricken the testimony without either conducting a more searching inquiry under MRE 702 or holding a *Davis-Frye* hearing. On remand, the trial court may once again determine that plaintiff's causation experts' testimony must be stricken as unreliable and speculative. Before reaching this conclusion, however, the trial court must satisfy its obligation under MRE 702 or conduct a *Davis-Frye* hearing and give plaintiff the opportunity to establish the reliability of the testimony. We recognize that there are unique complications with establishing the reliability of this type of testimony because conducting a medical or scientific study on this subject would require cancer patients to do the unthinkable: volunteer to participate in a study in which their cancer would be left untreated so that doctors could then track the progression and staging of their cancer. No patient would volunteer for such a study, and no ethical medical or scientific study would ask cancer patients to submit to such a study.[2] The fact that such studies are nonexistent should not necessarily operate as a complete bar to plaintiff's medical malpractice action, however, in the absence of a more searching inquiry into the reliability of the testimony supplied by plaintiff's experts.

---

[2] Although it is true that in certain clinical trials participants receive placebos, this rarely occurs in a clinical trial involving treatment for cancer. According to the American Cancer Society:

Placebos are rarely used alone in cancer research, unless no known effective treatments exist. It's certainly not ethical to have someone take a placebo if an effective standard treatment is already available. When cancer clinical trials compare treatments, they compare the new treatment against the current standard treatment. At times, a study may be designed so that patients may not be told which one they are receiving, but they know they are at least getting the current standard of care. [American Cancer Society, *Clinical Trials: What you Need to Know* <http://www.cancer.org/docroot/ETO/content/ETO_6_3_ Clinical Trials_-_Patient_ Participation.asp> (accessed October 6, 2005).]

Even if there is a lack of specific scientific or medical data on the subject, plaintiff's experts' opinion testimony may nevertheless be deemed sufficiently reliable if the process of "backwards cancer staging" and the bases for plaintiff's experts' opinions are generally accepted in the medical community as being reliable. See *Beckley, supra* at 718-719. It may be that oncologists generally do engage in "backwards cancer staging" and that they consider certain specific factors in doing so. On the record before us, however, it is impossible to determine whether such conduct is generally accepted in the medical community. The trial court acted too hastily in precluding the testimony without more carefully examining the reliability of the testimony. We find that plaintiff should be given the opportunity to establish, by impartial and disinterested experts, that it is accepted in the medical community for doctors to engage in backwards cancer staging and to explain the bases for the propriety of engaging in such backward cancer staging, which might include the doctor's individual knowledge and experience, the general knowledge in the scientific community, the type of cancer, the patient's individual presentation, as well as additional relevant factors. It may be that the trial court will once again find the evidence to be too speculative and unreliable. Indeed, the fact that Drs. Veach and Singer could not agree on whether the decedent's cancer was a slow-growing or fast-growing cancer underscores the reliability concerns with this type of evidence. Nevertheless, in the absence of a more searching inquiry into the reliability of such evidence, we cannot affirm the trial court's decision in this case.

Given the limited record before us, we are unable to determine whether testimony that the decedent's lung cancer was at Stage I or Stage II in July 1997 was competent evidence. The trial court should have either

conducted a more searching inquiry under MRE 702 or a *Davis-Frye* evidentiary hearing before striking the testimony of plaintiff's causation experts. Therefore, we remand this case to the trial court. If, on remand, the trial court determines that plaintiff's experts' testimony regarding "backwards cancer staging" is a novel scientific principle, then the trial court shall conduct a *Davis-Frye* evidentiary hearing. If the trial court determines that the evidence does not constitute a novel scientific principle, then the trial court shall conduct a more searching inquiry under MRE 702 to determine whether the testimony satisfies the three *Beckley* conditions articulated above.

Vacated and remanded. We do not retain jurisdiction.