*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RASCHELLE GOFF,

      Plaintiff-Appellant,

v

KAREN L. NIVER, M.D., and NORTHPOINTE
OB/GYN, P.C.,

      Defendants-Appellees.

UNPUBLISHED
June 18, 2019

No. 343315
St. Clair Circuit Court
LC No. 16-001788-NH

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Raschelle Goff, appeals as of right the order of the trial court dismissing her claim against defendants, Karen L. Niver, M.D. (Niver) and Northpointe OB/GYN, P.C. (Northpointe). We affirm.

## I. FACTS

This case involves a claim of medical malpractice arising out of medical care and treatment provided to plaintiff by Niver and her professional corporation, Northpointe, following the delivery of plaintiff's baby on July 10, 2014. Plaintiff alleges that during the birth of her baby, who at birth weighed 11 pounds, 4 ounces, she suffered three injuries: a second-degree tear in the perineum, a rectovaginal fistula, being a tear from the vagina into the rectum, and a fourth-degree tear of the anterior wall of the external anal sphincter. At the time Niver delivered plaintiff's baby, Niver identified the second-degree tear in the perineum and surgically repaired the tear immediately after the delivery of the baby. Niver testified that she did examine plaintiff for additional injuries, but did not identify any other injury. Plaintiff was discharged from the hospital on July 12, 2014.

On July 17, 2014, plaintiff called Niver, complaining of fever, nausea, vaginal bleeding, diarrhea, and the inability to control her bowels. Niver prescribed antibiotics for plaintiff, but did not examine plaintiff or talk to her personally. On July 19, 2014, plaintiff went to the emergency room at Port Huron Hospital with continuing symptoms. Concerned about the possibility of a fourth-degree tear, doctors at Port Huron Hospital sent plaintiff to the University

-1-

of Michigan emergency department. There, she was diagnosed with a possible compromised anal sphincter, but was told to follow up with Niver. She saw Niver on July 21, 2014, at which time Niver diagnosed a tear in the external anal sphincter, but did not diagnose a rectovaginal fistula.

On July 31, 2014, plaintiff was seen at University of Michigan Medical Center, where she was diagnosed with a "chronic third-degree laceration," being a "separation of her external anal sphincter." Dr. Dee Ellen Fenner performed surgery to repair the external anal sphincter, and during that surgery confirmed the presence of a suspected rectovaginal fistula. The rectovaginal tear was repaired surgically by Dr. Fenner at University of Michigan Medical Center on August 4, 2014. After the surgeries, plaintiff underwent physical therapy beginning in September 2014. Plaintiff continued to experience fecal leakage and underwent additional surgical procedures in December 2015 and May 2016, but continued to have some bowel control problems and to periodically experience fecal leakage.

Plaintiff brought this action alleging that Niver violated the standard of care by failing to recognize and surgically repair the external sphincter tear and the rectovaginal tear following the delivery. Plaintiff alleged that as a result of the delay in diagnosis and treatment, she now suffers from fecal incontinence and pelvic floor issues. Before the trial court, plaintiff presented Dr. Robert Dein as an expert on the issues of standard of care and causation. Dein opined that Niver's care of plaintiff fell below the standard of care, and that the delay in repairing the tear of the external anal sphincter decreased the likelihood of a successful repair, and thus decreased the likelihood that plaintiff would make a total recovery. Dein testified that his opinion was based upon his own experience and expertise, not upon any specific scientific literature or studies. Plaintiff did not introduce any scientific literature or studies to support Dein's opinion.

Defendants filed a motion in limine seeking to exclude Dein's testimony regarding causation, arguing that plaintiff had not presented medical or scientific data to support Dein's opinion that earlier repair of the lacerations would have made a difference in the long-term outcome. The trial court granted defendants' motion in limine, holding that plaintiff had not demonstrated that Dein's opinion regarding causation was based on reliable principles and methods. The trial court noted that plaintiff had not provided any scientific literature or study to support Dein's causation testimony, and Dein could not give reliable foundation for his opinion other than his own experience. The trial court found that Dein's causation testimony therefore was not reliable under MRE 702 and MCL 600.2955(1). The trial court directed defendants to submit a proposed order reflecting the trial court's decision.

Defendants submitted a proposed order under MCR 2.602, and plaintiff objected to the proposed order because it not only excluded Dein's causation testimony, but also dismissed plaintiff's claim in its entirety. Plaintiff, however, did not submit an alternative proposed order, nor did plaintiff notice the hearing on the proposed order and objection as required by MCR 2.602(B)(3)(c). Defendants eventually moved for entry of their proposed order, responding to plaintiff's objections. At a hearing on the motion, the trial court entered defendants' proposed order granting defendants' motion in limine and also dismissing plaintiff's claim. The trial court thereafter denied plaintiff's motion for reconsideration. Plaintiff now appeals to this Court.

## II. DISCUSSION

### A. MOTION IN LIMINE

Plaintiff contends that the trial court abused its discretion by granting defendants' motion in limine and excluding the testimony of Dr. Dein, plaintiff's expert witness on causation and standard of care. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion in limine, see *Elezovic v Ford Motor Co*, 472 Mich 408, 431; 697 NW2d 851 (2005), and similarly reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). An abuse of discretion occurs when the trial court chooses an outcome outside the realm of reasonable and principled outcomes. *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). This Court also reviews for an abuse of discretion the trial court's decision regarding the qualification of an expert. *Clerc v Chippewa Co War Mem Hosp*, 267 Mich App 597, 601; 705 NW2d 703 (2005). "[A]ny error in the admission or exclusion of evidence will not warrant appellate relief unless refusal to take this action appears . . . inconsistent with substantial justice, or affects a substantial right of the [opposing] party." *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004) (quotation marks and citation omitted).

A medical malpractice claim is one that arises during the course of a professional medical relationship and hinges upon a question of medical judgment. *Lockwood v Mobile Med Response, Inc*, 293 Mich App 17, 23; 809 NW2d 403 (2011). To establish medical malpractice, the plaintiff bears the burden of proving "(1) the applicable standard of care, (2) a breach of that standard by the defendant, (3) an injury, and (4) proximate causation between the alleged breach of duty and the injury." *Rock v Crocker*, 499 Mich 247, 255; 884 NW2d 227 (2016). "'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig*, 471 Mich at 86. A court is required to first determine whether a defendant's negligence was a cause in fact of the plaintiff's injuries before determining whether the defendant's negligence was the legal cause of those injuries. *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017). Proximate cause must be proved by a preponderance of the evidence. *Craig*, 471 Mich at 86.

To establish cause in fact, the plaintiff must present substantial evidence from which the jury could conclude that, but for the defendant's conduct, the plaintiff's injuries would not have occurred. *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). A plaintiff establishes cause in fact sufficient to create a genuine issue of material fact if the plaintiff establishes "a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Patrick v Turkelson*, 322 Mich App 595, 617; 913 NW2d 369 (2018) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

In a medical malpractice action, expert testimony is required to prove causation. *Kalaj*, 295 Mich App at 429. The proponent of the expert testimony must establish that the expert is

qualified under MCL 600.2169, and also that the opinion is reliable under MRE 702 and MCL 600.2955. See *Elher v Misra*, 499 Mich 11, 22; 878 NW2d 790 (2016). In this case, the parties do not dispute Dein's qualifications, but do dispute whether his opinion on causation was reliable.

MRE 702 requires a trial court to determine that each aspect of a proposed expert witness's testimony, including the underlying principles and methodology, is reliable. *Id*. That rule provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [MRE 702.]

Our Supreme Court has stated that a lack of supporting medical literature is an important consideration in determining the admissibility of expert witness testimony, but not necessarily dispositive. *Edry*, 486 Mich at 640. Our Supreme Court has also said, however, that an expert in a medical malpractice lawsuit is expected to justify his or her opinion with authoritative materials supporting the opinion, and that generally, it is not sufficient under MRE 702 to argue that expert testimony is reliable, and therefore admissible, based solely on the expert's experience and background. *Id*. at 642.

In addition to MRE 702, MCL 600.2955 requires the trial court to determine, by examining the expert's opinion and its basis, whether an expert's opinion is reliable and will assist the finder of fact. *Elher*, 499 Mich at 23. The trial court is required to consider the facts, technique, method, and reasoning upon which the expert relied, considering:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.
>
> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
>
> (d) The known or potential error rate of the opinion and its basis.
>
> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f)  Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g)  Whether the opinion or methodology is relied upon by experts outside the context of litigation.  [MCL 600.2955(1).]

The trial court, as gatekeeper regarding expert testimony, is obligated to ensure that expert testimony is both relevant and reliable, *Edry*, 486 Mich at 640, by conducting a "searching inquiry." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 381 (2004). Ultimately, the trial court must rule on the strength of the record presented, see *Edry*, 486 Mich at 640-642, and it is the burden of the party introducing the expert testimony to demonstrate that the evidence is sufficiently reliable. *Figurski v Trinity Health-Michigan*, 501 Mich 1051, 1053; 909 NW2d 445 (2018) (MARKMAN, C.J., dissenting).  As gatekeeper, the trial court is not required "to search for absolute truth, to admit only uncontested evidence, or to resolve genuine scientific disputes." *Chapin v A & L Parts, Inc*, 274 Mich App 122, 127; 732 NW2d 578 (2007). However, the trial court must ensure that admitted expert opinion testimony is derived from a sound foundation. *Id*.

In this case, Dr. Dein testified that Niver violated the standard of care by failing to diagnose and treat the rectovaginal tear and the anal external sphincter tear at the time of delivery.  Dein further testified that this breach of the standard of care was the cause in fact of plaintiff's ongoing impairment:

> So the goal is to repair tissue before it becomes inflamed.  We know that Mrs. Goff by day seven, after delivery, developed a high fever up to 103 degrees. We know that when she was examined by, I believe, Dr. Slay, she called the tissue [friable].  So it was very inflamed tissue.  And when you have inflamed tissue, the likelihood of a successful repair is much lower.  So the whole issue here is not that there was a hole in her rectum or an injury to the sphincter that can happen with a large baby.  The issue is that that was not recognized, and by not being recognized, the patient got inflamed and the likelihood of future stool function being normal goes down.

> * * *

> So the best chance of having long-term normal function is to repair the injuries before intense inflammation sets in.  And when you have a rectovaginal fistula, you basically have stool, and more importantly, the bacteria from stool in spaces that are not designed to handle it, such as the vagina.  And what happens then is you have an intense inflammatory state and tissue tends to break down.

> So had you been – I'm sorry – had the patient had the injuries recognized and been repaired in the delivery room on July 10, 2014, yeah, she still could have had issues down the line, and there's no question that sometimes that happens, but the chances of having normal stool function significantly decreases because she had a – a significant delay in diagnosis.

Dein, however, agreed that some women who have the repair surgery immediately nonetheless fail to fully recover, and that there was no way to quantify the risk of incomplete recovery. In response to questioning, he testified:

> Q: . . . Where there is a sphincter tear in a female that's birth related, a certain percentage of those women go on to have problems regardless, right?
>
> A: As I stated on direct, yes, that's true.
>
> Q: And there is really no way to quantify, is there, whether or not Mrs. Goff fell into a different category as opposed to somebody who had – a woman who had a fourth-degree sphincter tear as a result of a birth?
>
> A: By quantifying, you mean is there a number we can assign to it?
>
> Q: Exactly.
>
> A: There's no number we can assign to it.
>
> Q: I mean it is – and you may disagree – but it is conceivable that despite this alleged delay in repair, Mrs. Goff could have gone on to have the same problems today totally unrelated to the delay in the repair procedure? [objection]
>
> A: Well, I mean, I think we talked about that on direct, that some women will have continuing problems, but that a delay leading to an intense inflammation is going to increase the risk that that repair will not hold. So, yes, it is possible that she could have had it, but she has reduced her opportunity to have normal function by having the delay in recognition.
>
> Q: And we don't know how much reduction within a reasonable degree of medical certainty?
>
> A: No.

Dein conceded that he was relying solely upon his own experience and expertise as the basis for his opinion, and not upon specific scientific literature or studies. Regarding whether support existed for Dein's testimony that delay in diagnosing and repairing the tears resulted in plaintiff having a lesser chance of full recovery,[1] Dr. Fenner testified that there was no data to support the opinion that a delay of three or four weeks before performing the repair surgery would result in an increased risk of incomplete recovery.

---

[1] Dr. Fenner testified that plaintiff had fully recovered from the rectovaginal fistula and Fenner considered that surgery to have been successful. Her testimony regarding plaintiff's ongoing recovery related to the injury to the external anal sphincter.

Defendants filed a motion in limine to exclude Dein's causation testimony, arguing that it was not reliable because plaintiff had failed to support Dein's opinion with any scientific data. The trial court granted the motion, and held, in relevant part:

> Dr. Dein stated that he based his opinion on his personal experience and not on any specific scientific literature or study. He testified that a portion of women who suffer a fourth-degree tear will still go on to have bowel problems in the future, but he believes that the delay in this case reduced Plaintiff's opportunity to have normal bowel function. However, Dr. Dein could not quantify that reduction within a reasonable degree of medical certainty. Further, Plaintiff has not provided any scientific data to support Dr. Dein's opinion. In fact, Dr. Fenner, who performed Plaintiff's repair, stated in her deposition that there is inadequate scientific data to support Dr. Dein's opinion.

> The only foundation that Dr. Dein offered for his opinion is that if the repair is not made at the time of delivery, then the surrounding tissue will become inflamed and friable. When that happens, Dr. Dein opined, the subsequent repair is much more likely to break down. However, once again, Dr. Dein did not provide any evidence or literature to support his reasoning.

> After reviewing Dr. Dein's testimony and examining his opinion and its basis, including the facts, technique, methodology, and reasoning relied on by Dr. Dein, pursuant to MRE 702 and MCL 600.2955(1), this Court finds that Plaintiff has not shown that Dr. Dein's opinion is based on reliable principles and methods. Plaintiff has not provided any scientific literature or study to support Dr. Dein's opinion, and Dr. Dein himself could not give a reliable foundation for his opinion other than his experience. As stated previously, "Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Id*. [*Elher*, 499 Mich] at 23. There is no testimony to support the finding that Dr. Dein's testimony is the product of reliable principles and methods. Therefore, this Court finds that Dr. Dein's causation testimony is not reliable pursuant to MRE 702 and MCL 600.2955(1) and will not assist the trier of fact.

Trial courts are in the best position to conduct the searching inquiry into the reliability of expert testimony, and this Court will not overturn the trial court's ruling to exclude or admit expert testimony absent an abuse of the trial court's discretion. *Figurski*, 501 Mich at 1053 (MARKMAN, C.J., dissenting), citing *Craig*, 471 Mich at 76. Here, a review of the record indicates that the trial court was acting within its reasonable discretion when it excluded the testimony of Dr. Dein. The trial court considered the factors set forth in MCL 600.2955(1), and determined that Dein did not present any scientific literature or studies to support his opinion that the alleged delay in diagnosing and repairing plaintiff's injuries negatively affected her ability to completely recover.

Plaintiff argues that there are no studies to support Dein's opinion that the delay in plaintiff's treatment decreased the odds of her fully recovering because to conduct a study where the treatment of patients was delayed would be unethical. Plaintiff argues that she should not be

penalized for the non-existence of an unethical study.[2] But in this case, plaintiff did not introduce any data to support Dein's testimony in any regard. For example, Dein testified that the failure to repair the injuries at the time of delivery resulted in increased inflammation, which then made repairing the injuries more difficult. Plaintiff, however, did not present any data to support these underlying propositions. Plaintiff is therefore unable to argue that she has met any of the reliability factors of MCL 600.2955(1).

Generally, it is not sufficient under MRE 702 to rely only upon an expert's experience and background to argue that the expert's opinion is reliable. *Edry*, 486 Mich at 642. "The whole point of *Daubert* [*v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993)] is that experts can't speculate. They need analytically sound bases for their opinions, and it is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Edry*, 486 Mich at 642 n 6 (quotation marks and citation omitted). The proponent of evidence bears the burden of establishing its admissibility, and a trial court may only admit expert testimony after it ensures the reliability of the evidence under MRE 702. Here, plaintiff failed to provide scientific support for any aspect of Dein's opinion. Given the authority supporting exclusion of testimony when there is no support for the theory beyond the expert's own opinion, it cannot be said that the trial court's decision was outside the range of reasonable and principled outcomes.

## B. DISMISSAL OF CLAIM

Plaintiff next contends that the trial court erred in dismissing the entirety of her complaint. We review de novo a trial court's decision to grant or deny a motion to dismiss. *Mouzon v Achievable Visions*, 308 Mich App 415, 418; 864 NW2d 606 (2014).

After the trial court issued its opinion granting defendants' motion in limine, plaintiff objected to the proposed order submitted by defendants that included language dismissing her claim in its entirety. Plaintiff argued that she should be allowed to proceed on a claim for damages she incurred before her injuries were properly treated. The trial court noted that plaintiff had waived her objection to the proposed order because she had not followed the proper procedure for objecting. The trial court also determined that the proposed order properly reflected the trial court's ruling.

Plaintiff now contends that the trial court erred in dismissing the entirety of her claim and that she should be permitted to proceed on a claim for damages for the period between when her

---

[2] Plaintiff presupposes that the only way to create the data would be to delay medical treatment to some women who need the surgery, overlooking the possibility that some women might have had medical treatment delayed incidentally, as was potentially true in the case of plaintiff's care, and thus their cases could be studied. In fact, Dr. Fenner's testimony suggested that some data did exist regarding women whose repair surgery was delayed for as long as 10 to 30 years, and she opined that in those cases, the chance of full recovery was not as great as compared with patients who had the surgical repair immediately. There is no suggestion that the study referenced was unethical or that patients were intentionally denied treatment.

injury occurred and when she obtained proper medical care. Plaintiff argues that the evidence before the trial court supported a claim for damages for this period. A review of the complaint, however, demonstrates that plaintiff did not specifically allege damages for that period. Although the complaint does reference past pain, suffering, wage loss and medical expenses, the complaint does so in the context of seeking damages for ongoing pain and disability related to her incomplete recovery.

Because plaintiff's complaint did not specifically seek the damages she now wishes to seek, it appears that essentially plaintiff wanted to amend her complaint in the face of dismissal. Yet plaintiff never submitted a motion to amend the complaint in the trial court. At the time of dismissal in this case, plaintiff required leave of the trial court to amend her complaint. MCR 2.118(A)(2) provides that leave to amend "shall be freely given when justice so requires." The trial court must then give a particularized reason for denying leave, such as undue delay, bad faith, or dilatory motive, repeated failures to cure deficiencies after allowed amendment, undue prejudice, or futility. *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007). Further, if a trial court grants summary disposition under MCR 2.116(C)(8), (9), or (10), the trial court is required to give the parties an opportunity to amend their pleadings unless it would be futile to do so. *Jawad A. Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018).

In this case, in the face of the proposed order of dismissal, plaintiff could have sought leave to amend her complaint. However, although a plaintiff may have a right to amend a complaint under MCR 2.116(C)(I)(5), that court rule does not require the trial court to "sua sponte offer plaintiff an opportunity to amend." *Kloian v Schwartz*, 272 Mich App 232, 242; 725 NW2d 671 (2006). Plaintiff in this case objected to the proposed order of dismissal, but did not seek leave to amend her complaint. The trial court therefore did not err in dismissing plaintiff's claim, absent a motion by plaintiff to amend the complaint to include the claim she now raises on appeal.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle