*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BETHANY ZEHEL, Individually and as Personal Representative of the ESTATE OF ROWYN VASQUEZ,

Plaintiff-Appellee,

v

CLARK EDWARD NUGENT, M.D., DEBORAH BERMAN, M.D., JUSTIN JUNN, M.D., ALICE MAY CHI, M.D., and ANGELA SIMMEN KELLEY, M.D.,

Defendants-Appellants.

UNPUBLISHED
May 29, 2025
9:42 AM

No. 357511 and 358134
Washtenaw Circuit Court
LC No. 19-000388-NH

ON REMAND

Before: JANSEN, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

This matter returns to us on remand from our Michigan Supreme Court with directions to reconsider the issues of damages and expert-witness testimony. We reverse and remand for further proceedings.

## I. BACKGROUND

As explained in our previous opinion, *Zehel v Nugent*, 344 Mich App 490, 495; 1 NW3d 387 (2022), plaintiff sued defendants for medical malpractice due to the death of Rowyn Vasquez following her birth by cesarean section (C-section). Rowyn's twin survived. Relevant to this appeal, defendants moved for partial summary disposition of plaintiff's claims related to the timing of the C-section on the basis that there were no scientific or factual bases for the causation opinions of plaintiff's experts, Dr. Robert A. Dein, M.D., and Dr. John Elliott, M.D. Plaintiff argued in response that the opinions of Dr. Elliott and Dr. Dein were admissible and reliable under MRE 702 and MCL 600.2955(1). Plaintiff agreed to the propriety of an evidentiary hearing "for this one

-1-

challenged opinion that an earlier C-Section would have resulted in a better uterine tone" if the trial court needed more information regarding the reliability of the proposed causation testimony. The trial court did not hold an evidentiary hearing.

In his deposition, Dr. Elliott, a specialist in the field of maternal-fetal medicine, explained that excessive uterine tone was "a titanic contraction." He stated that excessive uterine tone during a C-section was unpredictable, he had never seen it before, and he was not sure that he had ever read about it. Dr. Elliott did not know why the excessive uterine tone occurred during the C-section. Dr. Elliott thought that, "to a degree of medical probability," with a shorter labor, there would not have been excessive uterine tone. Dr. Elliott explained that if a person was having less frequent contractions, she was less likely to have excessive uterine tone, but there was "no literature to that effect." Dr. Elliott's opinion was made on the basis of physiology and anatomy, although he could not say what length of labor caused a risk of excessive uterine tone.

Dr. Dein, plaintiff's expert in obstetrics and gynecology, testified that he had performed "a handful" of deliveries with excessive uterine tone, although it was "very unusual." Dr. Dein thought that the excessive uterine tone was caused by the prolonged labor, but he did not know the specific physiological cause. Dr. Dein admitted that excessive uterine tone was unpredictable and unexpected, but, had there not been excessive uterine tone, the doctors would have likely been able to deliver Rowyn more quickly. Dr. Dein stated that there should have been a C-section "once it became obvious that there was a breech Baby B." Dr. Dein thought that it was "reasonable to state more probably than not that" an earlier C-section would have avoided the excessive uterine tone.

Defendants also moved for summary disposition of plaintiff's claims of loss of financial support and services. Michael Thomson, Ph.D., stated in a deposition that he was asked to provide information to help evaluate Rowyn's lost earnings capacity. When asked if the evaluation also considered the value of the loss of household services, Thomson stated that "when you're talking about market work and non-market work, household services is being included as part of the evaluation of earnings capacity."

During a hearing on defendants' motions, the trial court relied on *Denney v Kent Co Rd Comm*, 317 Mich App 727; 896 NW2d 808 (2016), to deny defendants' motion for summary disposition as to the loss of future earnings and services. As to the prolonged labor and excessive uterine tone, the trial court explained that, although it was not known why excessive uterine tone happened in some cases, the lack of predictability did not establish that there was "not a causal relationship between prolonged labor and excessive uterine tone." The trial court acknowledged defendants' argument that plaintiff needed to present studies to support the claim, but stated that the experts had testified that the prolonged labor could have caused the injuries. Accordingly, the trial court found that plaintiff had provided sufficient evidence regarding proximate cause for the issue of whether the prolonged labor caused the excessive uterine tone and contributed to Rowyn's injuries.

In our previous opinion, we reversed the trial court's denial of defendants' motion regarding future earnings on the basis that the earning potential was too speculative. *Zehel*, 344 Mich App at 516. We also held that the trial court did not err by finding that the proffered expert testimonies were admissible and, accordingly, denying partial summary disposition as it related to causation involving the timing of the C-section. *Id.* Our Michigan Supreme Court remanded the

case for this Court to reconsider these issues in light of the Court's decisions in *Daher v Prime Healthcare Servs-Garden City, LLC*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 165377) and *Danhoff v Fahim*, 513 Mich 427; 15 NW3d 262 (2024). *Zehel v Nugent*, 12 NW3d 396 (2024).[1]

## II. ANALYSIS

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2023). A trial court properly grants summary disposition if "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (cleaned up). In contrast, "[a] motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998).

### A. LOSS OF FINANCIAL SUPPORT AND SERVICES

"Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section." MCL 600.2921. The wrongful-death act (WDA) provides, in relevant part, that, in actions under this section:

> the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased. [MCL 600.2922(6).]

In this case, the trial court relied on *Denney*, in which this Court held that "damages for lost earnings are allowed under the wrongful-death statute." *Denney*, 317 Mich App at 732. In *Daher*, however, our Supreme Court overruled *Denney*, and held "that lost-earning-capacity damages are not available under the WDA." *Daher*, ___ Mich at ___; slip op at 23-24. See also *Baker v Slack*, 319 Mich 703; 30 NW2d 403 (1948). The Court explained that the Legislature added a provision for "loss of financial support," rather than for "loss of future earnings," to the WDA in 1985. *Daher*, ___ Mich at ___; slip op at 22. In this case, plaintiff has not made a claim due to loss of financial support, and defendants are entitled to summary disposition as to plaintiff's claims related to future-earning potential. See *Daher*, ___ Mich at ___; slip op at 24.

In supplemental briefing following the remand, plaintiff acknowledges that "in the absence of proof of financial support," future lost earnings are not recoverable, but argues that household

---

[1] The Michigan Supreme Court's order left undisturbed this Court's previous holding regarding neonatal resuscitation theory.

-3-

services were not at issue in the original appeal. Defendants, however, ask this Court to dismiss "[p]laintiff's claim for future lost earning capacity, including the value of any household services." Defendants argued in their original brief on appeal, and in their motion for summary disposition, that claims for household services should have been dismissed. Defendants indisputably raised the issue in this Court and below.

The WDA provides for "damages for the loss of financial support," MCL 600.2922(6), and there is no other provision allowing for the recovery of household services without such a showing of support. Because "the WDA only provides for enumerated damages," see *Daher*, ___ Mich at ___; slip op at 17, the trial court erred by failing to grant defendants' partial motion for partial summary disposition related to plaintiff's claims of loss of financial support and services.

## B. EXPERT TESTIMONY ON CAUSATION

Next, we consider plaintiff's proposed expert testimony in light of *Danhoff*. We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *Shivers v Covenant Healthcare Sys*, 339 Mich App 369, 373; 983 NW2d 427 (2021).

In a medical-malpractice case, a plaintiff must establish (1) the applicable standard of care, (2) breach of that standard, (3) injury, and (4) "proximate causation between the alleged breach and the injury." *Danhoff*, 513 Mich at 432 (cleaned up). Expert testimony is generally required to establish standard of care and causation in a medical-malpractice claim. *Dorsey v Surgical Institute of Mich, LLC*, 338 Mich App 199, 231; 979 NW2d 681 (2021). A trial court must consider MRE 702 and MCL 600.2955 to determine whether an expert is reliable. *Danhoff*, 513 Mich at 433. At the time that the trial court made its decision, MRE 702 provided:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Edry v Adelman*, 486 Mich 634, 642; 786 NW2d 567 (2010).

Further, MCL 600.2955(1) provides that, in an action for a death or injury,

> a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:
>
> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

In *Danhoff*, 513 Mich at 432, our Supreme Court addressed "whether an expert in a medical malpractice lawsuit can reliably support their opinion on the standard of care if the adverse event is so rare that published, peer-reviewed medical literature on the subject may not exist." The Court held that scientific literature is not always required to support an expert opinion, but it is one factor that a trial court should consider when determining whether an opinion is reliable. *Id*. at 432-433. Although in some cases a lack of literature may prevent a trial court from finding that an expert is reliable, experts in other cases "may demonstrate reliability without supportive literature, especially where a complication is rare and there is a dearth of supportive literature available to support the opinion." *Id*. at 433. In *Danhoff*, 513 Mich at 456, the Court held that the trial court erred by determining that the expert testimony was unreliable on the basis that it was unsupported by medical literature and remanded for the trial court to determine whether the opinions were reliable under MRE 702, MCL 600.2955, and MCL 600.2169.

MCL 600.2955 includes several factors to consider, rather than a sole requirement that an expert's opinion be supported by medical literature. See *id*. at 455. "If the failure to produce medical literature means that a plaintiff's otherwise reliable expert opinions are inadmissible, patients who experience complications so rare that they are not studied by the academic community or discussed in peer-reviewed publications would not be able to offer admissible expert testimony when seeking legal recourse for their injuries." *Id*.

In this case, the trial court acknowledged the lack of predictability, but was satisfied that plaintiff's experts' opinions were sufficient to establish "a causal relationship between prolonged labor and excessive uterine tone." The trial court did not articulate, however, how the expert testimony was reliable under MRE 702 or MCL 600.2955. Although a trial court has discretion in its gatekeeping role, "a trial judge may neither abandon this obligation nor perform the function inadequately." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NWd 391 (2004) (cleaned up). "Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation." *Id*. at 782. The trial court's limited consideration of

the proposed testimony under MRE 702 and MCL 600.2955 requires remand for the trial court to determine whether the proposed opinions were reliable. See *Danhoff*, 513 Mich at 456; *Clerc v Chippewa Co War Memorial Hosp*, 267 Mich App 597, 604-605; 705 NW2d 703 (2005).

According to defendants, the studies that they produced with their motion for reconsideration make this case more similar to the situation in *Edry*, 486 Mich at 640, in which the expert's testimony was properly excluded under MRE 702 when it was not based on reliable methods; it was contradicted by published literature and another expert; and the plaintiff did not produce any scientific literature in support of the expert's opinion. Defendants argue that the trial court erred by failing to consider the new evidence. A trial court has discretion to decline to consider new evidence submitted with a motion for reconsideration that could have been presented with the initial motion. See *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). These materials may, however, be relevant on remand, with the trial court more properly positioned to make factual findings regarding the reliability of the expert opinions under the proper standards.

On remand, the trial court must reexamine the plaintiff's experts' testimony under MCL 600.2955 and MRE 702, and in light of *Danhoff*, to determine whether it can meet the standard of reliability despite the lack of scientific research. If the trial court determines, after considering all of the appropriate factors, that the opinions are reliable and admissible, it must then determine whether plaintiff has demonstrated a genuine question of material fact on causation.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

Jansen, J., not participating, having retired from the Court of Appeals.